**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **IN RE: MARY D. SLAEY,** ) | **Bankruptcy No. 13-10541-RGM** |
| Debtor. ) | |
| _____ ) | |
| ) | |
| ) | |
| **MARY D. SLAEY,** ) | |
| Appellant, ) | |
| ) | |
| v. ) | **Civil Action No. 1:14cv1210** |
| ) | |
| **P.H. HARRINGTON, JR.,** ) | |
| Appellee. ) | |

## MEMORANDUM OPINION

This bankruptcy appeal presents the question whether the Bankruptcy Court erred in allowing a creditor's claim against the debtor for a defaulted loan where, as here, the claim is barred by the statute of limitations unless the debtor's written agreement not to assert the limitations bar is given effect. A Virginia statute, Va. Code § 8.01-232(A), limits and defines the circumstances under which agreements not to assert the statute of limitations can be enforced. Thus, the question presented in this appeal is, more precisely, whether the Bankruptcy Court, in allowing the creditor's claim, correctly construed and applied this statute. For the reasons that follow, the Bankruptcy Court did not do so and hence the allowance of the barred claim must be reversed.

**I.**

Only a brief recitation of the pertinent facts and procedural history is necessary for resolution of the instant appeal. Thus, the record reflects that on July 10, 2002, appellee P.H.

1

Harrington, Jr., an attorney, loaned $235,000 to his then-friend and client, appellant Mary D. Slaey. This loan took the form of a $235,000 cashier's check made out to "M.L. Denese Slaey" drawn from Harrington's personal bank account at Branch Banking and Trust Company. Slaey contemporaneously executed a Promissory Note with respect to this loan (the "2002 Note"). Pursuant to the terms of the 2002 Note, Slaey promised to repay "P.H. Harrington Jr. Pension Plan" the total amount of $235,000, with interest at the rate of 8% per annum on the unpaid balance from July 10, 2002, until the date of maturity. In this regard, the 2002 Note had an express term of only one month, providing that the unpaid balance was "payable in one lump sum installment of principal and interest on or before August 10, 2002."

According to Harrington, Slaey failed to satisfy the terms of the 2002 Note anytime between 2002 and 2008. Slaey and Harrington nonetheless remained in contact with one another throughout these years, apparently both for legal and personal reasons. And, given his legal background, Harrington was aware that legal enforcement of the 2002 Note was governed by Virginia's six-year statute of limitations applicable to negotiable instruments.[1] Thus, on August 7, 2008—three days before expiration of the six-year limitations period—Harrington drafted an agreement for Slaey's approval and signature. This agreement provided that Slaey agreed not to raise a statute of limitations defense "in any legal proceeding that relates to funds borrowed" by

---

[1] Section 8.3A-118 of the Virginia Code prescribes a six-year statute of limitations for negotiable instruments like the 2002 Note. *See* Va. Code § 8.3A-118(a) (providing that "an action to enforce the obligation of a party to pay a note payable at a definite time must be commenced within six years after the due date stated in the note or, if a due date is accelerated, within six years after the accelerated due date"). Given that the 2002 Note had an express maturity date of August 10, 2002, the six-year statute of limitations for legal enforcement of the 2002 Note expired on August 10, 2008.

2

Slaey from Harrington between 2002 and 2008.   This written agreement—hereinafter referred to as the 2008 SOL Waiver—specifically provided, in its entirety, as follows:

### AGREEMENT

> For Ten Dollars ($10.00) cash in hand paid, receipt of which is hereby acknowledged by the undersigned, and for other good and valuable consideration, the undersigned agrees that she will not raise the defense of the statute of limitations in any legal proceeding that relates to funds borrowed by either DeNese Slaey or SIM[2] from P.H. Harrington, Jr. Esquire and/or P.H. Harrington, Jr. pension plan from January 1, 2002 through January 1, 2008.
>
> Signed this 7th day of August, 2008.

The six-year loan period covered by the 2008 SOL Waiver—January 1, 2002 to January 1, 2008—clearly includes the $235,000 loan extended to Slaey on July 10, 2002, that resulted in the contemporaneous 2002 Note.   The record also clearly reflects that Slaey signed the 2008 SOL Waiver presented to her by Harrington, and Harrington, in turn, signed the 2008 SOL Waiver as a witness.

Nearly five years later, on February 4, 2013, Slaey initiated bankruptcy proceedings in the Eastern District of Virginia by filing a petition for bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code.   Harrington, by counsel, then filed a creditor's claim in Slaey's bankruptcy proceeding on September 4, 2013.   The standard proof of claim form submitted by Harrington identified the basis of the claim as "Money Loaned and Unjust Enrichment," and the claim was in the total amount of $523,706.38.   This total amount included, *inter alia*, $235,000 for the entire principal amount of the 2002 Note, as well as interest on the 2002 Note from July 10,

---

[2] SIM is a government contracting company that appears to have been owned and operated by Slaey during periods relevant to this action.

2002, to February 4, 2013.[3]

In the course of the bankruptcy proceedings, Slaey, by counsel, objected to Harrington's claim on multiple grounds. With respect to the 2002 Note, in particular, Slaey raised four objections, namely (i) that Harrington's claim was barred by the statute of limitations, (ii) that Slaey had not executed the 2002 Note, (iii) that the majority of the 2002 Note had already been repaid to Harrington, and (iv) that Slaey was not personally liable on the 2002 Note. Slaey also challenged the validity of the 2008 SOL Waiver, arguing that it could not operate to save Harrington's time-barred claim because it did not meet the statutory requirements of a valid written waiver of the statute of limitations pursuant to Virginia Code § 8.01-232, which is the Virginia statute that limits and defines the circumstances under which agreements not to assert the statute of limitations can be enforced.

On March 20, 2014, the Bankruptcy Court held an evidentiary hearing on Slaey's objection to Harrington's claim. Harrington and Slaey were the only two witnesses. At the conclusion of the hearing, the Bankruptcy Court made certain preliminary factual determinations, including (i) that Slaey, rather than her company, SIM, personally incurred the $235,000 debt covered by the 2002 Note, (ii) that Slaey had not made any payments on the 2002 Note, and (iii) that Slaey and Harrington had jointly executed the 2008 SOL Waiver prior to expiration of the six-year statute of limitations applicable to negotiable instruments in Virginia. The Bankruptcy Court also concluded that failure to enforce the 2008 SOL Waiver would "operate as a fraud" on Harrington

---

[3] Harrington's claim against Slaey filed in the bankruptcy court also included additional amounts not pertinent to the instant appeal. It is worth noting, however, that the materials submitted in support of Harrington's claim reflect that the July 10, 2002 loan at issue here was not the only instance in which Harrington loaned significant sums of money to Slaey and/or Slaey's company.

within the meaning of Virginia Code § 8.01-232 given that Harrington detrimentally relied on the 2008 SOL Waiver in not filing a lawsuit against Slaey based on the 2002 Note within the six-year limitations period. In other words, the Bankruptcy Court held that the 2008 SOL Waiver was valid and enforceable in these circumstances, and that expiration of the six-year statute of limitations did not preclude Harrington's claim against Slaey's bankruptcy estate. In the end, therefore, by Order entered May 14, 2014, the Bankruptcy Court allowed Harrington's claim against Slaey on the 2002 Note (with some minor adjustments not pertinent to the instant appeal) in the total amount of $234,420.67. *See In re: Mary D. Slaey*, Case No. 13-10541-RGM (Bankr. E.D. Va. May 14, 2014) (Order).

On May 28, 2014—two weeks after the Bankruptcy Court rendered its decision allowing Harrington's claim—Slaey filed a motion to reconsider based on what she claimed was "newly discovered evidence" that Harrington had already been repaid on the 2002 Note. Harrington filed a prompt written objection to Slaey's motion to reconsider, and the Bankruptcy Court ultimately denied the motion by Order dated July 15, 2014. *See In re: Mary D. Slaey*, Case No. 13-10541-RGM (Bankr. E.D. Va. July 15, 2014) (Order). Slaey then filed the instant appeal with this Court pursuant to 28 U.S.C. § 158.[4]

In the appeal, Slaey initially raised two distinct arguments, namely (i) that the Bankruptcy Court erred in concluding that the 2008 SOL Waiver was valid and enforceable under Virginia Code § 8.01-232, thereby allowing Harrington's time-barred claim on the 2002 Note, and (ii) that the Bankruptcy Court erred in denying Slaey's motion for reconsideration based on alleged newly

---

[4] That statute provides, in pertinent part, that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees [of the bankruptcy court]." 28 U.S.C. § 158(a)(1).

discovered evidence.   Not surprisingly, Slaey, by counsel, later withdrew the argument pertaining to newly discovered evidence in the course of these appeal proceedings.  *See* Tr. of 12/12/14 Hearing (where appellant's counsel states that "on the new evidence issue . . . I don't want you to waste your time on it.  I am prepared to withdraw that issue and focus only on the Statute of Limitations issue").  Thus, the sole remaining issue on appeal is whether the Bankruptcy Court erred in allowing Harrington's otherwise time-barred claim on the 2002 Note in light of the 2008 SOL Waiver.  In other words, the precise question presented here is whether the Bankruptcy Court correctly concluded that the 2008 SOL Waiver is valid and enforceable under Virginia Code § 8.01-232 on the ground that failure to enforce the 2008 SOL Waiver would "operate as a fraud" on Harrington within the meaning of that statute.  *See* Va. Code § 8.01-232(A) (providing that "[w]henever the failure to enforce a promise, written or unwritten, not to plead the statute of limitations would operate as a fraud on the promisee, the promisor shall be estopped to plead the statute").

## II.

The standard of review applicable to a bankruptcy appeal filed with a district court is the same standard that is applied by a court of appeals reviewing a district court proceeding.  *See* 28 U.S.C. § 158(c)(2) (providing that "[a]n appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules").  Thus, a district court reviews the bankruptcy court's factual findings for clear error and its legal conclusions *de novo*.  *See National Heritage Found., Inc. v. Highbourne Found.*, 760 F.3d 344, 347 (4th Cir. 2014);  *SG Homes Associates, LP v. Marinucci*, 718 F.3d 327, 334 (4th Cir. 2013).

Moreover, "[m]ixed questions of law and fact are also reviewed *de novo.*" *In re J.A. Jones, Inc.,* 492 F.3d 242, 249 (4th Cir. 2007).   The issue presented in the instant appeal is a mixed question of law and fact that must be reviewed *de novo.*

## III.

Analysis properly begins with the plain language of the applicable Virginia statute.   As already noted, Va. Code § 8.01-232 governs the validity and legal effect of written and unwritten promises not to plead the statute of limitations in Virginia.   That statute—entitled "Effect of promises not to plead statute"—provides, in pertinent part, as follows:

> Whenever the failure to enforce a promise, written or unwritten, not to plead the statute of limitations would operate as a fraud on the promisee, the promisor shall be estopped to plead the statute.   In all other cases, an unwritten promise not to plead the statute shall be void, and a written promise not to plead the statute shall be valid when (i) it is made to avoid or defer litigation pending settlement of any case, (ii) it is not made contemporaneously with any other contract, and (iii) it is made for an additional term not longer than the applicable limitations period.

Va. Code § 8.01-232(A).

Thus, carefully read, the governing language of Va. Code § 8.01-232(A) may be viewed as consisting of essentially three parts, with two of those parts setting forth general rules regarding the validity and enforceability of (i) unwritten and (ii) written promises not to plead the statute of limitations, and the third part setting forth (iii) a limited exception to those general rules. Specifically, Part I provides that, with one limited exception set forth in Part III, *unwritten* promises not to plead the statute of limitations are generally void and unenforceable in Virginia. Part II of the statute provides that, again, with one limited exception set forth in Part III, a *written* promise not to plead the statute is generally valid and enforceable only if three specified

requirements are met, namely, if the written promise (i) is made to avoid or defer litigation pending settlement of a case, (ii) is not made contemporaneously with any other contract, and (iii) is made for an additional term not longer than the applicable limitations period. Va. Code § 8.01-232(A). Finally, Part III of the statute—and the part at issue in the instant appeal—provides a limited exception to the general rules set forth in Parts I and II. That limited exception specifically provides that "[w]henever the failure to enforce a promise, written or unwritten, not to plead the statute of limitations would operate as a fraud on the promisee, the promisor shall be estopped to plead the statute." Va. Code § 8.01-232(A).

Here, the parties do not dispute that the facts of this case do not fall within Parts I or II of the statute. Specifically, not only is there no oral agreement involved in this case, but the parties' written agreement—the 2008 SOL Waiver—clearly does not meet all three requirements of a valid and enforceable written promise not to plead the statute of limitations.[5] Thus, the sole question presented here is whether failure to enforce the 2008 SOL Waiver would "operate as a fraud" on Harrington in this instance, so as to place this case within the limited exception set forth in Part III of § 8.01-232(A).

Thus, to resolve this appeal, it is necessary to determine precisely what is meant by the phrase "operate as a fraud," as used in the limited exception set forth in Part III of § 8.01-232(A). Regrettably, the statute provides no additional guidance in this regard. And given the dearth of

---

[5] To be sure, nothing in the record supports the conclusion that the 2008 SOL Waiver was made to defer litigation *pending settlement* of any case, as required by Part II of § 8.01-232(A). Nor was it made for an additional term not exceeding the applicable six-year limitations period. *Id.* In fact, the 2008 SOL Waiver did not include *any* time limitation at all, and instead purports to be an indefinite promise on Slaey's part not to plead the statute of limitations with respect to any loans extended to her by Harrington from January 1, 2002 through January 1, 2008. Such an indefinite promise, of course, does not fit within the statutory framework for valid written promises not to plead the statute of limitations.

8

applicable case law, it is also apparent that this statutory exception is rarely addressed or cited in either the state or federal court systems. In fact, only two published cases have addressed the operative statutory language at issue here. Both cases were decided more than 75 years ago in the context of the previous version of the Virginia statute, which was then codified at Va. Code § 5821.[6] Specifically, the Court of Appeals for the Fourth Circuit was the first to address the issue in *Tucker v. Owen*, 94 F.2d 49 (4th Cir. 1938), and the Supreme Court of Virginia's decision in *Soble v. Herman*, 9 S.E.2d 459 (Va. 1940) followed shortly thereafter.

In concluding that failure to enforce the 2008 SOL Waiver would "operate as a fraud" on Harrington in this instance, the Bankruptcy Court relied exclusively on the Fourth Circuit's 1938 decision in *Tucker*. There, the Fourth Circuit addressed the question whether an unwritten promise not to plead the statute of limitations to a claim for a debt, which promise was made before the statute of limitations had expired and was relied on by the plaintiff in that case, was enforceable by reason of waiver or estoppel after expiration of the limitations period. And, as in the instant

---

[6] Like the current version of Va. Code § 8.01-232(A), the earlier version contained a provision that estopped a promisor from raising a statute of limitations defense "[w]henever the failure to enforce a promise, written or unwritten, not to plead the statute of limitations would operate a fraud on the promisee." *Tucker v. Owen*, 94 F.2d 49, 50 (4th Cir. 1938). The former version of Va. Code § 8.01-232(A) provided, in full, as follows:

> Promise not to plead the statute.—Whenever the failure to enforce a promise, written or unwritten, not to plead the statute of limitations would operate a fraud on the promisee, the promisor shall be estopped to plead the statute. In all other cases an unwritten promise not to plead the statute shall be void, and a written promise not to plead it shall have the effect of a promise to pay the debt or discharge the liability.

*Tucker*, 94 F.2d at 50; *see also Soble v. Herman, et al.*, 9 S.E.2d 459, 461 (Va. 1940) (quoting former version of the statute). Thus, the most notable distinction between the two versions of the statute is in the addition of the three enumerated requirements that written waivers must now meet to be valid and enforceable under § 8.01-232(A).

case, the analysis in *Tucker* focused sharply on whether it would "operate a fraud" on the plaintiff not to enforce defendant's oral promise not to plead the statute of limitations.[7]

The district court in *Tucker* had determined that the circumstances presented there did not fall within the statute's limited fraud exception because "mere proof that a promise has been made and broken is not sufficient to establish fraud unless it is shown that when the promise was made the promisor *then* had the intention not to fulfill it." *Tucker*, 94 F.2d at 50-51 (emphasis added). In other words, "[f]inding no evidence that the defendant had such an intention when the promise was made, the [district court] judge concluded that no fraud had been proved and that the plea of limitations should be upheld." *Id.* at 51.

A panel majority of the Fourth Circuit, however, disagreed with the district court's decision in *Tucker*, and instead interpreted the word "fraud," as used in the Virginia statute, more broadly.[8]   In doing so, the Fourth Circuit noted that the Supreme Court of Virginia had, at the time, not yet spoken on the issue and, "in the absence of a pronouncement by the courts of Virginia," the district court's strict interpretation of the word "fraud," as used in the statute, did not appear "to be in harmony with the purpose of the act." *Id.*   In this regard, the Fourth Circuit specifically noted the following:

> The broad intention [of the statute] is manifest to protect a creditor
> who has relied on the promise of his debtor and to make it
> impossible for the debtor to secure immunity from an honest claim

---

[7] There is no discernible difference in meaning or effect between the current version of Va. Code § 8.01-232(A), which states "operate as a fraud," and the predecessor statute which used the phrase "operate a fraud."

[8] The *Tucker* majority opinion was authored by Circuit Judge Soper and joined in by District Judge McClintic, who was then sitting with the Fourth Circuit by designation.   Circuit Judge Northcott wrote a dissenting opinion in *Tucker*.

10

through the medium of his broken word.   Such conduct may not be
fraud in the sense of a false pretense, that is, a false representation of
an existing fact, but if successful, it makes possible a gross injustice
and lacks the elements of honesty and fair dealing which are the
antitheses of fraud.   Indeed, using the expression in an intelligent
and proper sense, such conduct would, in the words of the statute,
'operate a fraud' and would be regarded as an act of bad faith.

*Id.*   The Fourth Circuit further concluded that in the absence of any controlling Virginia case law

interpreting the operative language of the statute, there was "no compulsion . . . to restrict the

scope of the statute by a narrow interpretation of the word 'fraud.'"  *Id.* at 52.   Instead, the Fourth

Circuit found "sound basis for the conclusion that the [Virginia] Legislature intended to stigmatize

as fraudulent the failure of a debtor to keep a promise of this sort upon which his creditor has

relied, and to estop the debtor from pleading the defense when at his request the suit has been

delayed."  *Id.* at 53.[9]

It should be noted that had *Tucker* been the only pertinent judicial opinion available at the

time the Bankruptcy Court rendered its decision in this case, its conclusion that the failure to

enforce the 2008 SOL Waiver would "operate as a fraud" on Harrington within the meaning of §

8.01-232(A) would have been consistent with applicable precedent.   Indeed, it appears quite clear

on this record that Harrington detrimentally relied on the 2008 SOL Waiver in not filing a suit

against Slaey within the statute of limitations period.   But, as it happens, the Supreme Court of

---

[9]   This, in essence, is the general legal standard applicable to a claim for promissory estoppel or
detrimental reliance, rather than a typical fraud claim.  *See, e.g., Mongold v. Woods*, 677 S.E.2d
288, 292 (Va. 2009) (stating that "[w]here it is available, the cause of action based on promissory
estoppel consists of four elements, recently defined as: '(1) a promise, (2) which the promisor
should reasonably expect to cause action by the promisee, (3) which does cause such action, and
(4) which should be enforced to prevent injustice to the promisee'") (quoting *Barnhill v. Veneman*,
524 F.3d 458, 475-76 (4th Cir. 2008)).

Virginia subsequently addressed the issue two years after *Tucker*, in *Soble v. Herman*, 9 S.E.2d 459 (Va. 1940).   And significantly, the *Soble* decision makes unmistakably clear that the Fourth Circuit's broad interpretation of the word "fraud" in *Tucker* is not the view adopted by the Supreme Court of Virginia.

Like *Tucker*, *Soble* was decided in the context of Va. Code § 5821—the previous version of Va. Code § 8.01-232(A).   The facts of *Soble* are relatively straightforward and can be summarized as follows:   A Maryland citizen named Benjamin Herman died in 1931 and his widow was named the sole beneficiary and executrix of his estate.   At the time of his death, Mr. Herman was indebted to the plaintiff, J. Soble, in the sum of $2,500, as evidenced by a note due 90 days from July 14, 1931.   Soble did not file suit on the note within the applicable five-year statute of limitations in light of an oral statement made by Mr. Herman's widow that "she would never see him [Soble] lose anything and would never plead the statute of limitations against said note, and that she would pay [the note]." *Soble*, 9 S.E.2d at 461.   Soble eventually filed suit against the widow's estate after she, too, died before the note had been satisfied.

On these facts, the question presented in *Soble* was, as the Supreme Court of Virginia put it, "whether an oral promise not to plead the statute of limitations, made by the executrix and sole beneficiary of an estate, [wa]s sufficient to remove the bar of the statute in a suit filed by the creditor to subject [decedent's] real estate . . . to the payment of a debt due by decedent." *Id.* Soble, the creditor, argued in that case that the failure to enforce the widow's oral promise not to assert the statute of limitations would "operate a fraud" on Soble within the meaning of Va. Code § 5821.   Soble thus argued that his claim on the note should be permitted to proceed despite expiration of the applicable limitations period.

Significantly, the Supreme Court of Virginia flatly rejected Soble's argument in this regard. In doing so, the court relied on the well-settled principle that "[f]raud must relate to a present or a pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." *Soble*, 9 S.E.2d at 464. In other words, the court specifically held that the word "'fraud,'—as used in the phrase 'will operate a fraud upon the promisee'—'must relate to a present or a pre-existing fact' and cannot be established by allegation or proof of a non-fulfilled, naked, oral promise." *Id.* at 464. This sensible conclusion is consistent with the notion that "a mere promise to perform an act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character." *Id.* Indeed, "the very nature of a promise to do something in the future is such that its truth or falsity, as a general rule, cannot be determined at the time it is made." *Id.*[10]

There is, however, a well-established exception to this general rule "where an action for fraud and deceit is 'predicated on promises which are made with a *present* intention not to perform

---

[10] The Supreme Court of Virginia acknowledged the Fourth Circuit's earlier decision in *Tucker*, specifically noting as follows:

> The views stated herein are believed to be sound, notwithstanding the contrary views ably expressed in the majority opinion of the Circuit Court of Appeals for the Fourth Circuit in *Tucker v. Owen*, 94 F.(2d) 49. However, the strength of that case, as an authority to be followed, is weakened by the strong dissenting opinion of Judge Northcott and the well-stated opinion of the district judge, Robert N. Pollard, both of whose conclusions are in accord with those expressed here.

*Soble*, 9 S.E. 2d at 465. Here, the Bankruptcy Court did not address or mention the *Soble* decision in its ruling, and instead relied exclusively on the Fourth Circuit's earlier decision in *Tucker*. Of course, it is the Supreme Court of Virginia that has the final say on the correct interpretation of a Virginia statute.

them, or on promises made without *any* intention to perform them.'" *Patrick v. Summers*, 369

S.E.2d 162, 164 (Va. 1988) (citing *Lloyd v. Smith*, 142 S.E.2d 363, 365 (Va. 1928)) (emphasis

added).   In that circumstance, "if a defendant makes a promise that, *when made*, he has no

intention of performing, that promise is considered a misrepresentation of *present* fact and may

form the basis for a claim of actual fraud." *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 342 (Va.

2008) (citations omitted) (emphasis added).   Thus, in cases falling within this exception to the

general rule, "[t]he gist of fraud . . . is not the breach of the agreement to perform, but the

fraudulent intent" present in the promisor's mind at the time the promise is made.   *Patrick*, 369

S.E.2d at 164.   And, as with all claims of fraud and deceit, such fraudulent intent must be

established by clear and convincing evidence.   *See id.* (concluding that "[w]hile the evidence may

be sufficient to raise doubts concerning the defendant's intention when the time came for

performance of his promise . . ., it is insufficient as a matter of law to show he had the intent to

defraud *at the time he made the promise*," and such evidence was thus "inadequate to qualify as the

clear, cogent, and convincing proof required to establish an action for fraud and deceit") (emphasis

added).

   Here, the record discloses no evidence, let alone clear and convincing evidence, that Slaey

made any misrepresentation of present fact to Harrington at the time she signed the 2008 SOL

Waiver.   Indeed, a review of Harrington's testimony from the underlying bankruptcy proceedings

confirms just the opposite, as illustrated by the following exchange between Harrington and

Slaey's counsel:

> Q.   And at the time of the waiver of the statute of limitations, did
> Ms. Slaey make any representations to you that caused you to
> proceed with the waiver?
> A.   No, no.   She came on in to sign it.   And we just met, and she

signed it, and that was it. . . You know, she just signed it. And I
said thank you, now we can get on with our lives.
Q. So there was no – there was [sic] no statements that you relied
on? She just – you gave it to her, she signed it?
A. Yeah.
Q. That was that.
A. Yeah.

Tr. of 3/20/14 Bankr. Ct. Hearing, p. 129-30.

Simply put, therefore, the circumstances presented here involve merely an unfulfilled

written promise on Slaey's part not to assert a statute of limitations defense in a future suit brought

by Harrington. *Soble,* 9 S.E.2d at 464. Such a naked, unfulfilled promise is precisely what the

*Soble* court made clear would not satisfy the limited fraud exception set forth in Va. Code §

8.01-232(A). Indeed, in the absence any clear and convincing evidence that Slaey made a

misrepresentation of present fact at the time she signed the 2008 SOL Waiver, which the record

confirms she did not, Harrington's argument that failure to enforce the 2008 SOL Waiver would

"operate as a fraud" within the meaning of the Virginia statute must be rejected and the

Bankruptcy Court's allowance of Harrington's time-barred claim must be reversed.[11]

## IV.

In sum, therefore, the 2008 SOL Waiver does not meet the statutory requirements for a

valid written promise not to plead the statute of limitations in Virginia, and failure to enforce the

2008 SOL Waiver in this instance would not "operate as a fraud" on Harrington within the

meaning of Va. Code § 8.01-232(A). Given this, Harrington's claim based on the 2002 Note is

---

[11] Were Harrington's argument to be accepted, virtually all situations where an individual makes
a written or oral promise not to raise a statute of limitations defense, and then later asserts the
defense contrary to the earlier promise, would arguably fall within the limited statutory fraud
exception. This, of course, was not contemplated by the General Assembly in enacting Va. Code
§ 8.01-232(A), as was confirmed by the Supreme Court of Virginia in *Soble.*

clearly barred by the six-year statute of limitations applicable to negotiable instruments in Virginia, and the Bankruptcy Court's decision allowing Harrington's claim in Slaey's bankruptcy proceeding must be reversed.

An appropriate order will issue.

Alexandria, Virginia
September 1, 2015

/s/

T. S. Ellis, III
United States District Judge

16